1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15
16
17

In the Matter of: DOUGLAS RAY,

    Debtor.

_____

BATTLE GROUND PLAZA, LLC,

    Appellant,

  v.

DOUGLAS RAY, *et al.*,

    Appellees.

Case No.  C11-5112RBL

Bankr. Case No. 00-36568

ORDER GRANTING APPEAL
FROM THE BANKRUPTCY COURT
AND ORDERING THE PAYMENT OF
RESTITUTION

18
19
20
21
22
23
24

    THIS MATTER comes before the Court on an appeal filed by Battle Ground Plaza, LLC ("BGP") of an order from the United States Bankruptcy Court for the Western District of Washington.  In that order, the bankruptcy court denied BGP's motion for restitution.  BGP seeks an order remanding this matter back to the bankruptcy court with instructions to order restitution for BGP with prejudgment interest.  For the reasons set forth below, the Court grants the appeal and orders the payment of restitution.

25

## I.  FACTS

26
27

    The background facts in this matter are set forth in *In re Ray*, 624 F.3d 1124 (9th Cir. 2010).  This order will briefly summarize the relevant facts from that decision and subsequent

28

events.

Douglas M. Ray, the debtor, filed a Chapter 11 petition on August 10, 2000.  At that time, Ray and Irwin P. Jessen ("Jessen") were co-owners of commercial real estate consisting of a shopping center commonly known as the Battle Ground Plaza Shopping Mall ("Battle Ground Mall").  In December 2000, Ray and Jessen (collectively, the "Sellers") entered into a purchase and sale agreement (the "Agreement") with BGP for the sale of the Battle Ground Mall.  The Agreement gave BGP a right of first refusal for an undeveloped, one-half acre adjoining parcel (the "1/2-Acre Parcel") also owned by the Sellers.

Subsequently, the Sellers decided to jointly convey their interest in the 1/2-Acre Parcel and entered into an agreement to do so with Dean Maldonado ("Maldonado").  Jessen's attorney sent a letter to BGP, notifying it of the Sellers' intended sale of the 1/2-Acre Parcel.  Rather than exercising or declining its first refusal rights, BGP claimed its rights were not ripe until the underlying sale of the Battle Ground Mall was closed.

Maldonado subsequently agreed to a reduction of the purchase price.  Notified of the new purchase price, BGP gave notice of its intent to exercise its first refusal rights.  Ray moved the bankruptcy court (with notice to BGP) to approve the sale of the 1/2-Acre Parcel to Maldonado.  Following a hearing, the bankruptcy court approved the sale of the 1/2-Acre Parcel to Maldonado "'free and clear of all liens and encumbrances . . . including but not limited to the right of first refusal granted to [BGP].'"  *In re Ray*, 624 F.3d at 1129 (quoting bankruptcy court order).  The bankruptcy court found BGP's attempted exercise of its right of first refusal failed.  Subsequently, the bankruptcy court denied BGP's motion for reconsideration.  BGP failed to either appeal the sale order or seek a stay necessary to prevent a direct appeal from becoming moot.  On December 29, 2005, the bankruptcy court issued a Final Decree closing the Chapter 11 Case.

BGP commenced a lawsuit in Clark County Superior Court (the "state court action") against the Sellers, Maldonado, and Maldonado's successor entities, alleging breach of its first

refusal rights, and seeking specific performance as well as damages and declaratory relief.  BGP

contended that the Sellers failed to advise BGP that they had executed an easement on the

property.  The state court "remanded" the action to the bankruptcy court, pending the bankruptcy

court's determination that it retained jurisdiction.  Under those circumstances and over BGP's

objection, the bankruptcy court reopened Ray's case in January 2007.  The bankruptcy court

held a hearing and entered an order retaining jurisdiction over the breach of contract claims.

Jessen's estate sought summary judgment, claiming no disputed facts could show the

Sellers had failed to provide BGP with sufficient notice of all conditions on which they would

have sold the 1/2-Acre Parcel to Maldonado.  The bankruptcy court granted summary judgment,

reasoning that its previous orders approving the sale were final and not subject to collateral

attack by BGP in state court, and, in any event, the Sellers complied with the terms of the right

of first refusal.  After the bankruptcy court denied its motion to reconsider, BGP appealed to the

BAP.  On December 31, 2008, the BAP affirmed the bankruptcy court's finding of jurisdiction.

BGP timely appealed to the Ninth Circuit.  While its appeal was pending, BGP paid the

attorney's fees judgment against it.  The Ninth Circuit reversed the BAP's decision, concluding

that the bankruptcy court lacked jurisdiction to resolve the parties' dispute.  BGP subsequently

filed a motion in the bankruptcy court for restitution to recover the funds it paid to satisfy the

attorney's fees judgment.  The bankruptcy court denied the motion without prejudice.

Thereafter, BGP appealed that ruling to this Court pursuant to 28 U.S.C. § 158 and Fed. R.

Bankr. P. 8001(e)(1).

## II.  DISCUSSION

As an initial matter, the parties dispute the applicable standard of review.  Appellees

argue that because restitution is an equitable remedy, the bankruptcy court's order denying that

remedy is reviewed for abuse of discretion.  [Brief of Appellees at p. 4] (citing, among other

authorities, *Schroeder v. United States*, 569 F.3d 956, 961 (9th Cir. 2009)).  While a court

reviews a decision to grant or deny equitable relief under an abuse of discretion standard, in this

case, the bankruptcy court did not actually decide the issue.  Instead, it "decline[d] to rule on this request and conclude[d] that the issue should instead be raised before the state court."  *See* Transcript of Hearing (Dkt. #10) at p. 5.[1]  In the absence of a ruling on the merits from the bankruptcy court, this Court reviews the issue *de novo*.  It notes, however, that the outcome would not change under an abuse of discretion standard.

## A.  Restitution

The Ninth Circuit has held on several occasions that a court must order restitution of funds obtained to satisfy a judgment that was later declared void.  *In re Graziadei*, 32 F.3d 1408, 1411 (9th Cir. 1994); *Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir. 1985); *Belcastro v. Task Indus., Inc.*, 1999 U.S. App. LEXIS 10665 (9th Cir. 1999).  In fact, in *In re Graziadei*, the court held that the lower court erred in declining to award restitution for funds paid pursuant to an order that was found void.  32 F.3d at 1410.  The court explained, "When we hold an order void, we must, if requested undo the effect of that order and restore the parties to the *status quo ante*."  *Id.* (citing *Watts*, 752 F.2d at 409-10).

Despite that authority, appellees argue that the Court should deny restitution as an equitable matter.  However, the authority appellees cite in support of their position did not involve a void judgment.  *See Atl. Coast Ry. Co. v. Florida*, 295 U.S. 301, 310 (1935) (analyzing an order that was voidable but not void); *Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust*, 824 F.2d 765, 767 (9th Cir. 1987) (involving a judgment that was reversed); Restatement of Restitution § 74 (addressing a judgment that is reversed or set aside).  As set forth above, the Ninth Circuit has declared that the court must order restitution when the judgment has been declared void.

Appellees also argue that restitution is unwarranted until a court makes a final determination of the parties' rights.  That argument, however, is inconsistent with the Ninth

---

[1] *See also id.* at p. 7 ("The 9th Circuit has directed this Court to dismiss this case based on lack of jurisdiction.  This court is unwilling and likely unable to take any action beyond vacating the prior judgments and dismissing the case."); *id.* at p. 9.

Circuit authority set forth above.  Moreover, to support the argument, appellees erroneously rely on authority regarding the "prevailing party," which is an inquiry distinct from the issue of restitution.

In addition to the fact that the prevailing party inquiry is legally distinct, it is also factually inapplicable at this point.  To support their contention that they are the prevailing parties, appellees note that after the bankruptcy court ruled, the Clark County Superior Court granted defendants'[2] motion for summary judgment, concluding that BGP's "claims were extinguished" by the bankruptcy court's order approving the sale of the ½ Acre Parcel. [Memorandum Opinion, Dkt. #12, at p. 3].  Because that document is a public record, the Court granted appellees' motion to take judicial notice of it.  However, the state court did not declare appellees to be the prevailing parties, and it ruled on only one of BGP's two claims.  The fact that the state court has not declared that appellees are the prevailing parties undermines their argument that an award of restitution would be inequitable.  Accordingly, consistent with Ninth Circuit authority, this Court reverses the decision of the bankruptcy court and orders appellees to pay restitution in the amount that appellant has paid pursuant to the void judgment.  In light of the recent state court ruling and BGP's insolvency,[3] the bankruptcy court on remand may order appellees to deposit the restitution funds and prejudgment interest into the Court's registry rather than paying the funds directly to BGP.  *See* Restatement of Restitution § 74, comment c.

**B.     Prejudgment Interest**

The Restatement of Restitution recognizes that if restitution is ordered, the recipient is also entitled to an award of prejudgment interest.  Restatement of Restitution § 74, comment d. Furthermore, an award of prejudgment interest is warranted to undo the effects of the erroneously entered judgment and to restore the parties to the *status quo ante*.  *Cf. Graziadei*, 32

---

[2] Defendants in the state court action include the Sellers.

[3] BGP owns no tangible property, and its debt obligations exceed its assets.  [Declaration of Bruce Feldman, Dkt. #7-1, at ¶ 3].

1   F.3d at 1410 (explaining the purpose behind restitution); *see also United States v. Cal. State Bd.*

2   *of Equalization*, 650 F.2d 1127, 1132 (9th Cir. 1981) (explaining that prejudgment interest

3   should be awarded when "necessary to make the wronged party whole").  The Ninth Circuit has

4   explained that "money has a time value, and prejudgment interest is therefore necessary in the

5   ordinary case to compensate a plaintiff fully for a loss suffered at time t and not compensated

6   until t + 1.  Moreover, prejudgment interest is a well-established remedy in this circuit." *Home*

7   *Savings Bank v. Gillam*, 952 F.2d 1152, 1161 (9th Cir. 1991).  As those authorities make clear,

8   an award of prejudgment interest is necessary to restore BGP to its prior position and undo what

9   it lost due to the faulty judgment.

10      Having found that prejudgment interest is warranted, the Court must determine when the

11   interest should begin to accrue.  BGP paid the judgment on June 22, 2010.  Although appellees

12   argue that interest should instead accrue from the date BGP demanded restitution, that position is

13   unsupported legally and is at odds with the "make whole" purpose of restitution.  Therefore,

14   BGP is entitled to interest from the date it paid the erroneous judgment.

15      The Court must also calculate the appropriate rate of interest.  Appellant argues that state

16   law applies to that inquiry, and Washington law sets a maximum rate of twelve percent per

17   annum.  RCW 19.52.020.  However, the "federal prejudgment interest rate applies to actions

18   brought under federal statute, such as bankruptcy proceedings, unless the equities of the case

19   require a different rate." *In re Banks*, 263 F.3d 862, 871 (9th Cir. 2001).  In this case, the

20   equities do not require a different rate.  Even though the Ninth Circuit ultimately found that the

21   bankruptcy court lacked jurisdiction, the erroneous judgments were entered in bankruptcy

22   proceedings.  Moreover, BGP's right to restitution arises not from its state law claim, but from

23   federal law and equity.  Therefore, on remand, when the bankruptcy court calculates

24   prejudgment interest, it should use the federal rate.

25                              **III.  CONCLUSION**

26      For all of the foregoing reasons, the Court GRANTS BGP's appeal, reverses the

27   bankruptcy court's order denying restitution, and remands this matter to the bankruptcy court to

28                                ORDER - 6

1   award restitution and pre-judgment interest.  The Clerk of the Court is directed to send copies of

2   this Order to all counsel of record and to the bankruptcy court.

3

4

5   **IT IS SO ORDERED.**

6       Dated this 12th day of October, 2011.

7

8       _____

9       RONALD B. LEIGHTON
        UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          ORDER - 7